# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TESSA L.[1]**, | Case No. 3:21-cv-66-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Bruce Whitman Brewer, LAW OFFICES OF BRUCE W. BREWER PC, PO Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Tessa L. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying his application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for SSI on July 10, 2018, alleging disability beginning on October 26, 1987. AR 122, 136. Plaintiff's date of birth is October 26, 1982, and she was 5 years old as of

the alleged disability onset date. AR 122. The agency denied her claim both initially and upon

reconsideration, and Plaintiff requested a hearing. AR 152, 159, 162. Plaintiff appeared for a

hearing before an ALJ in July 2020. AR 30. The ALJ issued a decision denying Plaintiff's claim

for benefits. AR 15-24. Plaintiff requested review of the ALJ's decision, which the Appeals

Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and

Plaintiff seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20

C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity?" *Id.*
§ 416.920(a)(4)(i). This activity is work involving significant mental or
physical duties done or intended to be done for pay or profit. *Id.*
§ 416.910. If the claimant is performing such work, she is not disabled
within the meaning of the Act. *Id.* § 416.920(a)(4)(i). If the claimant is not
performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's
regulations? *Id.* § 416.920(a)(4)(ii). An impairment or combination of
impairments is "severe" if it significantly limits the claimant's physical or
mental ability to do basic work activities. *Id.* § 416.921(a). Unless
expected to result in death, this impairment must have lasted or be
expected to last for a continuous period of at least 12 months. *Id.*
§ 416.909. If the claimant does not have a severe impairment, the analysis
ends. *Id.* § 416.920(a)(4)(ii). If the claimant has a severe impairment, the
analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. *Id.* § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. *Id.* §§ 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. *Id.* §§ 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2018. AR 18. At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of bipolar disorder, attention deficit hyperactivity disorder, posttraumatic stress disorder (PTSD), and autism spectrum disorder. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform "a full range of work at all exertional levels but with the following nonexertional limitations: she can do simple, routine, repetitive tasks with a reasoning level of 1-2, and occasional public contact, with no production pace." AR 20. At step four, the ALJ determined that Plaintiff could not perform any past relevant work. AR 22. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 23. The ALJ thus concluded that Plaintiff was not disabled. AR 24.

## DISCUSSION

Plaintiff argues the ALJ erred by discounting Plaintiff's symptom testimony and by discounting certain medical opinions. Plaintiff has withdrawn her argument that she is entitled to a new hearing based on the Commissioner's purported unconstitutional appointment. *See* ECF 25, at 1. The Court addresses each remaining argument in turn.

## A. Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 1.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be

equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found that Plaintiff's ability to act as the primary caregiver for her children, attend a gym, and take her family on vacation conflicted with her symptom testimony. AR 21. The record does not support the ALJ's conclusion. Plaintiff has demonstrated an ability to care for her children but only with significant help from third parties. Plaintiff testified that an aide comes to her house for four to eight hours per day to help Plaintiff with tasks such as going

grocery shopping, preparing food, cleaning the house, and serving as protection between Plaintiff and her children. AR 46. Plaintiff struggles to care for her children without entering a manic state and, as a result, causing them harm. *See* AR 504 ("[Plaintiff] wants to be a good Mom who is able to support her children . . . ."); AR 526 (describing reports of child abuse to DHS resulting from Plaintiff scratching and pushing her son and throwing a toy at her daughter); AR 578 (describing an incident where Plaintiff scratched her daughter with a fork, leaving marks on the daughter's arm and resulting in a DHS investigation); AR 581 ("[Plaintiff] is honest about her struggles and works with professionals to assist [her] in parenting her children well."); AR 1563-64 (noting that Plaintiff required assistance in creating a "proactive" plan to "decrease negative outcomes while her children are on a break from school"). When her children are not in school, Plaintiff stated they spend "[h]alf the time staying up and staying away from me." AR 47. Thus, Plaintiff's caretaking capabilities do not conflict with her symptom testimony.

Plaintiff's ability to go to the gym and go on vacation also does not conflict with her alleged limitations. As for Plaintiff's ability to go on vacation, Plaintiff only visited her family in Louisiana where she received assistance in taking care of herself and her children. AR 1437, 1466, 1497, 1613. Further, in preparation for the flight, Plaintiff arranged for assistance from airport staff to help Plaintiff manage her children while they traveled. AR 525. Because Plaintiff received substantial assistance while traveling and when she arrived in Louisiana, these trips do not conflict with her testimony. *See Jim H. v. Kijakazi*, 2021 WL 5862163, at *6 (D. Or. Dec. 10, 2021) ("An isolated instance of a claimant taking a trip of vacation is not necessarily clear and convincing evidence of inconsistency with disabling symptom testimony, especially absent evidence that the claimant engaged in specific activities while on vacation that contradict his or her testimony." (citing *Tackett*, 180 F.3d at 1103). Thus, Plaintiff's activities of daily living were

not a clear and convincing reason supported by substantial evidence to reject Plaintiffs subjective symptom testimony.

### 2. Work History

Conflict between a plaintiff's work history and symptom testimony is a clear and convincing reason to discount a plaintiff's testimony. *Camarena v. Kijakazi*, 2021 WL 5905720, at *1 (9th Cir. Dec. 14, 2021) ("Camarena's work history contradicted her testimony regarding her physical limitations and provided a non-arbitrary ground on which the ALJ could discredit her testimony." (citing *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020)).

Here, however, substantial evidence does not support the conclusion that Plaintiff's ability to work part-time conflicts with her alleged limitations. Plaintiff worked three days per week for three hours per day as an on-call substitute kitchen helper for a local school district. When Plaintiff attempted to work for more than three days per week, she entered into manic episodes. AR 41-42. On one occasion, Plaintiff worked five days per week for several weeks and as a result, experienced "aggressive mania" that required intervention from her counselor. AR 42. Plaintiff's work as an on-call part-time kitchen substitute allowed her to accommodate her symptoms, which full-time work would not allow. Thus, substantial evidence does not support the ALJ's conclusion that Plaintiff's on-call work conflicts with her symptom testimony.

### 3. Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). "Reports of

'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms and with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017 (cleaned up). "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned up).

As the Ninth Circuit explained in *Garrison*,

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

The ALJ found Plaintiff improved with treatment because "her therapist[']s treatment notes tend to reflect that she makes progress and is able to apply what she learns in therapy." AR 21. The ALJ relies on one treatment note from 2015 and another from 2018 to support her conclusion. *See* AR 21, 594, 667. Although Plaintiff has made an effort to implement the skills learned in therapy, these skills do not control Plaintiff's symptoms to a degree that permits her to work full-time. In January 2020, for example, when Plaintiff attempted to work five days per week for a period of two weeks, she experienced a manic episode that was "more extreme" than those she had experienced in the past. AR 1822, 1824. Plaintiff was undergoing therapy and taking medication at the time. AR 1822, 1824. Notably, Plaintiff's most consistent ability to

manage her symptoms occurred from March to May 2020, when she was not working. *See* AR 1775-98. Thus, Plaintiff's periodic successes do not provide a clear and convincing reason supported by substantial evidence to reject Plaintiff's testimony. *See Garrison*, 759 F.3d at 1017.

### 4. Harmful Error

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115; *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere

probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

The ALJ's error was not harmless because Plaintiff testified to limitations greater than those included in her RFC. For example, Plaintiff testified that working for five days a week as a kitchen assistant as a local school district exacerbated her symptoms and caused an episode of aggressive mania. AR 42-43. Plaintiff's RFC, however, only limits her to routine and repetitive tasks with occasional public contact and no production pace. AR 20. Thus, the error was harmful.

**B.  Medical Opinion Evidence**

Plaintiff filed her application for benefits on July 10, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. *Id.* § 416.920c(c)(1). Consistency

is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 1. Kathryn Whipple, Alex Pandzik, and Arlene Hagen

In a check-box form, Ms. Whipple opined that Plaintiff suffered from mild and moderate limitations in several areas related to understanding and memory, concentration and persistence, social interaction, and adaptation. AR 1087-90. Mr. Pandzik agreed with Ms. Whipple's opinion and added that Plaintiff experienced an increase in her PTSD and manic symptoms when she attempted to work for two to three hours per day on consecutive days. AR 1937. Dr. Hagen

agreed with Ms. Whipple's opinion in 2019 and again in 2020. AR 1639, 1938. The ALJ found these three opinions not persuasive because they lacked supporting medical evidence. AR 21-22. Substantial evidence does not support this finding. The record contains detailed treatment notes from Ms. Whipple and Dr. Hagen that support Ms. Whipple's opinion. *See, e.g.*, AR 498 (Ms. Whipple's note that Plaintiff has a "history of irritable behaviors and angry outbursts" and "an exaggerated startle response and hypervigilance"); AR 527 (Ms. Whipple's note after discussing ways to manage manic episodes when Plaintiff reported a manic episode caused her to stay awake for 48 hours); AR 1681-89 (Dr. Hagen's examination of Plaintiff and determination that Plaintiff has moderate social responsiveness symptoms associated with her diagnosis of Autism Spectrum Disorder). Mr. Pandzik supported his agreement with Ms. Whipple's opinion with the observation that work for two to three hours per day on consecutive days aggravated Plaintiff's PTSD and manic symptoms. AR 1937. The ALJ therefore erred by discounting the medical opinions of Ms. Whipple, Dr. Hagen, and Mr. Pandzik.

### 2. Karen Hedden

Ms. Hedden stated that Plaintiff had "been advised to limit her employment to not more than 20 hours per month and not to work consecutive days." AR 1680. The ALJ rejected this opinion because it lacked support and it was unclear who had offered that opinion. AR 22. Plaintiff argues that Ms. Hedden's treatment notes show that Ms. Hedden had adopted Plaintiff's request to work only 20 hours per week and not work on consecutive days. *See* AR 1802 ("She would like to limit [work] to 20 hours per month."). Ms. Hedden, however, did not provide any explanation to support her adoption of Plaintiff's request. Ms. Hedden's treatment notes primarily address Plaintiff's medications and do not record any independent assessment of her ability to work beyond taking note of Plaintiff's request. *See, e.g.*, AR 1791, 1803, 1817, 1830,

1847. Thus, substantial evidence supports the ALJ's finding that Ms. Hedden's opinion was not persuasive.

### 3.  Drs. Maryanne Bongiovani and Joshua Boyd

Drs. Bongiovani and Boyd found that Plaintiff perform only simple tasks with simple changes and limited public interaction. AR 130-32, 147-49. The ALJ found these opinions persuasive because they were "reasonably consistent with the record." AR 22. Plaintiff argues that the ALJ erroneously adopted the opinions of Drs. Bongiovani and Boyd because the ALJ did not address the inconsistencies between their opinions and Plaintiff's record. Plaintiff contends that the ALJ should have rejected Drs. Bongiovani and Boyd's opinion because they were not restrictive enough, considering that Plaintiff required in-home aide to take care of her children and experienced worsening symptoms when she tried to work full-time. But here, Plaintiff asks for her own interpretation of the record. The ALJ rationally concluded that the record supported Plaintiff's limitation to only simple, routine work with limited public interaction. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Thus, the ALJ did not err by finding Drs. Bongiovani and Boyd's opinions persuasive.

## C.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, there are outstanding ambiguities to be resolved with respect to Plaintiff's RFC. The Court remands for further proceedings so that the ALJ can properly evaluate Plaintiff's symptom testimony, the medical opinion of Ms. Whipple, Mr. Pandzik, and Dr Hagen, reevaluate Plaintiff's RFC, and continue to step four and five based on any revised RFC.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of August, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 17 – OPINION AND ORDER